160 320
187 ³615
187 ³616
90a ¹370
90a ¹493
91a ¹539

160 320
98a ² 5

160 320
99a ²316

160 320
101a ³186

160 320
197 ³624

160 320
211 ³370

160 320
113a 77

160 320
215 ³293
p215 ³294
e215 ³295

320:38 LRA 78?
39 LRA 114

# THE CICERO AND PROVISO STREET RAILWAY COMPANY
## *v.*
## FRANK MEIXNER.

*Filed at Ottawa October 11, 1895—Rehearing denied March 10, 1896.*

1. APPEALS AND ERRORS—*how far the Supreme Court may pass on facts.* The sufficiency of evidence to go to the jury or to sustain a verdict cannot be passed upon by the Supreme Court, on appeal, further than to ascertain if, at the close of the plaintiff's case, the question being then raised, there was evidence tending to prove the declaration, and whether, at the close of all the testimony, on the question being again raised, the evidence, with all proper inferences, was insufficient to support a verdict for plaintiff.

2. TRIAL—*question of due care by plaintiff is for the jury.* The exercise of due care or caution in boarding an electric street car while in motion is a question for the jury.

3. NEGLIGENCE—*per se—boarding electric car while in motion.* To board or depart from an electric car while in motion is not negligence *per se.**

4. SAME—*doctrine of comparative negligence abolished.* The doctrine of comparative negligence is no longer the law in Illinois.

5. INSTRUCTIONS—*effect of asking same instruction complained of.* An error in instructions cannot be complained of by a party who subsequently asks and obtains the same instruction.

*Cicero and Proviso St. Ry. Co. v. Meixner,* 55 Ill. App. 288, affirmed.

*A great number of authorities on the subject of negligence in getting on and off railroad trains (but not including street railroad cases) are found in a note to *Curr* v. *Eel River and Eureka Railroad Co.* (Cal.) 21 L. R. A. 354.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE F. BLANKE, Judge, presiding.

This was an action on the case, by appellee, against appellant, to recover damages for personal injuries received by him while attempting to board an electric street car. The facts sufficiently appear in the opinion. A jury in the trial court returned a verdict of $8000 for plaintiff, on which judgment was rendered, and on appeal to the Appellate Court it was affirmed. The case comes to this court on appeal from the judgment of the latter court.

WILLIAM H. BARNUM, JOHN A. POST, and JOHN B. BRADY, for appellant.

BRANDT & HOFFMANN, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

One of the errors assigned for the reversal of this judgment is the refusal of the trial court to instruct the jury, at the close of the plaintiff's evidence, to find for the defendant, and the refusal of the court to give a like instruction that, as a matter of law, the plaintiff had failed to make out his case, which was asked at the close of the argument.

It is urged that the evidence of plaintiff did not warrant the jury in finding that the injury of plaintiff was the result of defendant's negligence, as charged in the declaration, and also that the evidence of plaintiff establishes that he was not, at the time of his injury, in the exercise of reasonable care and caution. Both of these matters are ordinarily questions of fact, to be determined in the trial and Appellate Courts. As this court has frequently held, it is not our province to determine or pass

upon such questions, further than to ascertain whether
or not there was, at the close of plaintiff's case, evidence
tending to prove the facts alleged in the declaration,
and whether, at the close of all the testimony, when the
motion to instruct for defendant was refused, the evi-
dence, with all the inferences which the jury can justi-
fiably draw from it, was insufficient to support a verdict
for plaintiff, and that if one was returned it must be set
aside.    *Lake Shore and Michigan Southern Railway Co.* v.
*Richards,* 152 Ill. 59; *Wenona Coal Co.* v. *Holmquist,* id. 581;
*Pullman Palace Car Co.* v. *Laack,* 143 id. 242; *Purdy* v. *Hall,*
134 id. 298; *Chicago and Northwestern Railway Co.* v. *Dun-
leavy,* 129 id. 132; *Bartelott* v. *International Bank,* 119 id.
259; *Simmons* v. *Chicago and Tomah Railroad Co.* 110 id. 340.

Two elements alleged in the declaration, and necessary
to be established by plaintiff before he could recover,
were negligence of the defendant as charged, and that
the plaintiff was in the exercise of due care and caution
for his own safety.    It is not the province of this court
to say whether these facts are proven.    The evidence
before the trial court and jury tended to show that plain-
tiff, on August 10, 1891, was on Madison street, in Chicago,
about two blocks east of Desplaines avenue.    He was
walking east on the north side of Madison street, intend-
ing to board an east-bound car on defendant's line.    When
a car approached and was distant one hundred and fifty
or two hundred feet, plaintiff, still being on the sidewalk
on the north side of the street, signaled to the motorman
by throwing up his hand.    He then proceeded diagonally
to the middle of the street, and continued walking east-
wardly in the space between the two street car tracks.
The next street crossing east of him was Thomas street.
He continued between the two tracks some twenty-five
feet east of this crossing, when the car overtook him.
Plaintiff contends that before the car reached him he
had seen the motorman turn the brake, so that when he
attempted to get on the car had slacked down to a speed

of about four or five miles an hour.   He was still on the
left hand or the north side of the track, and desired to
get on the front platform.   As the car went by he caught
the hand rails on each side of the front platform, when
·he says the speed of the car was suddenly accelerated,
and he lost his hold, was dragged some forty feet or
more, and thrown under the wheels and his left hand
crushed off.   The material parts of plaintiff's testimony,
as above set forth, were corroborated by two spectators
who witnessed the occurrence,—one from the street and
the other from an adjoining yard not far distant.   Many
of these facts were contradicted by the motorman and
four passengers on the front platform, who testified that
the car was running at a speed of seven or eight miles
an hour when it reached plaintiff, and that the speed
had not been decreased for the reason that no signal was
seen, and that the speed was not accelerated, but, on
the contrary, the current was turned off and the brake
applied as soon as plaintiff attempted to get on.   It was
contended and testified to by these witnesses that plain-
tiff had his back turned to the car while walking, and
as the car approached and overtook him he attempted
to catch it with both hands; that the motorman at once
attempted to stop the car, and did so within a space of
thirty-five or forty feet.   Some passengers in the car
also testified that there was no decrease in speed until
after the accident occurred.

In the discussion of the question as to whether the
court erred in refusing to instruct the jury to find for
defendant, only the facts as presented and shown by
plaintiff's evidence will be considered.

The serious results of the injury to plaintiff are not
disputed.   He was a cabinet maker, and his skill as such
depended on the use of both his hands.   We have exam-
ined the record with the utmost care to ascertain if this
judgment is by it sustained.   Negligence is ordinarily
a question of fact for the jury.   In *Wabash Railway Co.* v.

*Brown,* 152 Ill. 484, this court said (p. 488): "Negligence is ordinarily a question of fact. Where the evidence on material facts is conflicting, or where, on disputed facts, fair-minded men of ordinary intelligence may differ as to the inferences to be drawn, or where, on even a conceded state of facts, a different conclusion would reasonably be reached by different minds, in all such cases negligence is a question of fact. * * * With all the facts considered, if there is a reasonable chance of conclusions differing thereon, then it is a question for a jury. Negligence may become a question of law where, from the facts admitted or conclusively proved, there is no reasonable chance of different reasonable minds reaching different conclusions." To hold that the trial court should have given the general instruction as asked, this court must hold that it was not a question of fact as to whether or not plaintiff was guilty of negligence contributing to the injury, but that it was a question of law, and was negligence *per se* for the plaintiff to attempt to board the car in question running at the rate of speed shown. If it was a question of fact, then it was properly submitted by the trial court to the jury.

This court has held in a number of cases that it is negligence for a passenger to get off a train, of which the motive power is steam, while the cars are in motion. (*Illinois Central Railroad Co.* v. *Lutz,* 84 Ill. 598; *Ohio and Mississippi Railway Co.* v. *Stratton,* 78 id. 88; *Illinois Central Railroad Co.* v. *Chambers,* 71 id. 519; *Illinois Central Railroad Co.* v. *Slatton,* 54 id. 133; *Chicago and Alton Railroad Co.* v. *Randolph,* 53 id. 510.) In *Chicago and Northwestern Railway Co.* v. *Scates,* 90 Ill. 586, this court said (p. 592): "If it is to be regarded dangerous for a passenger to get off a train of cars in motion, it is likewise dangerous to get on a train when in motion. If a person is guilty of such negligence in getting off a train of cars in motion as will preclude a recovery for an injury received, upon the same principle and for the same reason a person injured in getting on a

train of cars in motion, and in consequence thereof, should be regarded guilty of such negligence as will prevent a recovery." The courts of other States have adopted the same rule that it is negligence for a passenger to alight from a moving train of cars the motive power of which is steam.

·The rule as applicable to steam railways is relaxed when applied to horse cars or street railways. (*Terre Haute, etc. Railroad Co.* v. *Buck*, 96 Ind. 346; *Stoner* v. *Pennsylvania Co.* 98 id. 384). Beach on Contributory Negligence (sec. 90) says : · "It is well settled that it is not contributory negligence *per se* for one to alight from or to board a moving street car, and here again we find the severity of the rule as applicable to steam railways essentially relaxed." Booth on Street Railway Law (sec. 336) lays down the same rule in the following language: "Although the act of boarding a car while in motion is always attended with some risks, the rules applicable to persons entering cars operated by steam are not usually applied with the same strictness to street railways operated by horse power. It is a general rule, established by numerous decisions, that if a person who has the free use of his faculties and limbs has given proper notice of his desire to be taken up, and the speed of the car has been slackened in the usual manner, it is not negligence *per se* to attempt to get on while it is moving slowly, and that if a person is injured under such circumstances the question of his contributory negligence is ordinarily one of fact for the jury."

The doctrine is established in nearly all of the States where the question has arisen, that it is not negligence *per se* for a passenger to board or alight from a street car operated by horse power, and the question of contributory negligence is one of fact for the jury. (*McDonough* v. *Metropolitan Railway Co.* 137 Mass. 210; *Eppendorf* v. *Brooklyn, etc. Railroad Co.* 69 N. Y. 195; *Ganiard* v. *Rochester City, etc. Railroad Co.* 2 N. Y. Sup. 470; *Morrison* v. *Broad-*

*way, etc. Railroad Co.* 130 N. Y. 166; *People's Passenger Railroad Co.* v. *Green,* 56 Ind. 84; *North Chicago Street Railroad Co.* v. *Williams,* 140 Ill. 275.) In the case of *Sahlgaard* v. *St. Paul City Railway Co.* 48 Minn. 232, where the motive power of the car was a cable, the same rule as above stated was held also to be applicable.

In large and populous cities, where cars are constantly receiving and discharging passengers at crossings, it is a well known fact that many of such passengers board cars and alight therefrom before such cars have come to a full stop, and that they do so usually with perfect safety. It is well known, also, that street car companies tacitly invite many passengers to board and alight from their cars by checking up to a slow rate of speed, and immediately starting up at a greater speed when the passenger is safely aboard or has alighted. It would be impossible for a court to lay down the rule as to what particular rate of speed would be sufficient notice to a passenger that if he attempted to get on or off he would be held guilty of contributory negligence. It would also be a great hardship, and unjust, to lay down a general rule that a passenger attempting to board a street car while in motion at all should be held in contributory negligence. Every person is supposed to know that the boarding of a moving train or car is attended with the danger of a mis-step or fall, and a fall beside a moving car is liable to bring some part of the body or limbs in danger of being crushed. It is the duty of those having control and management of cars designated for traffic on the public streets, to bring such cars to a full stop at such places as are convenient and necessary for the purpose of discharging and receiving passengers, and it is no less the duty of passengers, in getting on or off such cars, to observe due precaution for their own safety. We cannot say, however, that it is inconsistent with ordinary care and caution for a person to board a street car while in motion. Whether one has not exercised due

care or caution in so doing is to be determined by the particular circumstances in each case, and is therefore a question of fact, to be submitted to the jury.

The cases heretofore cited, in which it has been held that it is not negligence *per se* for a person to board or alight from a street car while in motion, have reference, in a great degree, to horse cars. Where such motive power is used the act is not in itself negligence, while in the case of cars propelled by steam the act is held to be negligence. Where the motive power is electricity, a question not entirely free from difficulty is presented. The modern progress in methods of transportation, the recent discoveries of the possibilities of electricity as a motive power, and the perfection which it has within a few years developed and attained, have demonstrated a power popular as a method of transit. The purposes to which a power of this character is applied must, to some extent, be considered. Electricity has now in a great measure superseded horse power. The same style of cars, and often the same cars, are used, the same streets are traversed, and a like number of stops, and in like places, are made to receive and deliver passengers. Electricity as a motive power, while stronger and more powerful, and with possibilities of a greater speed, is at the same time more nearly under the control of the person in charge than horse power. The strict rule in force regarding the negligence of a person alighting or boarding an ordinary train of steam cars had for it many good and sufficient reasons which are not applicable to the electric car as in general use. In the latter case, stops are frequent and opportunity for great speed is not presented; steps for passengers are near the ground, and the chances of a mis-step or fall are not so great as in steam cars as constructed; streets on such lines are generally paved, and in that respect passengers may as safely depart or board such cars in one place as another, whereas in the case of steam cars platforms are gener-

ally provided.   While in electric cars the possibilities of speed are greater than in the case of horse cars, yet the general operation and management of such cars so nearly approach that of horse cars that it must be held that the same rule of law which in the cases cited and a long line of other cases holds that it is not negligence *per se* to board or depart from such cars while in motion, is also applicable to electric cars.

It follows, therefore, from this application of the rule, that in the case at bar it was solely a question of fact as to whether or not there was negligence in the acts of the defendant or contributory negligence on the part of the plaintiff.   There was evidence tending to prove the facts alleged in the declaration, and it was not error in the trial court to refuse the general instruction asked.  It was proper for the court to submit the question to the jury.

It is also urged as error that the trial court refused certain instructions which should have been given, and modified certain other instructions which should have been given to the jury as asked, and that such modification was error.   Sixteen instructions were asked on behalf of the defendant below, nine of which were given. Too much space would be occupied in considering in detail the objections to the instructions refused and modified.   We find, upon examination, that the fifth instruction, to which a modification was made by the court instructing the jury on the doctrine of comparative negligence, should not have been so modified.   The doctrine of comparative negligence is no longer the law in this State.   (*City of Lanark* v. *Dougherty*, 153 Ill. 163; *Pennsylvania Coal Co.* v. *Kelly*, 156 id. 9.)   It appears, however, that in the twelfth instruction asked by defendant below, and given by the court, the jury were instructed, in substance, the same as by the fifth instruction after its modification by the court.   In the twelfth instruction referred to, the jury were told that if they believed, from the evidence, that both the plaintiff and motorman were guilty

of negligence contributing to the injury, they should find their verdict against the plaintiff, unless they believed that the plaintiff's negligence was slight and that of the motorman was gross in comparison. While it was not proper for the court to make the modification of the fifth instruction, appellant is not now in a position to complain of such modification, from the fact that it, by the twelfth instruction, asked the court to instruct the jury that such was the law. The nine instructions given by the court to the jury for appellant fully covered the law and the facts in the case. There is no reversible error in the refusal or modification of instructions.

It is strongly urged by appellant that certain remarks of counsel for appellee on the trial of this case were such as should cause a reversal of this judgment. We have examined the record very carefully, and while we find the remarks and acts of counsel which are objected to were not of the character a trial court should permit, we are not prepared to look at them with the degree of seriousness that counsel for appellant urge in their brief. We have frequently said that it is the duty of the trial court to control counsel, in the conduct of a trial and in the argument of a case, within reasonable bounds. It is not always possible to bring before this court the expression of counsel in making objectionable remarks, and the acts of counsel in connection therewith, so that what might in the trial court be extremely improper is not presented to us with the same force. We are not able to see, after having carefully examined this record, that the remarks and conduct of counsel for appellee were such as in themselves should call for a reversal of this judgment.

Finding no error of law in this record, the judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*