## PETERMICHL v. CHICAGO & N. W. RY. CO.

No. 10812.

United States Court of Appeals
Seventh Circuit.

June 29, 1953.

Rehearing Denied Aug. 4, 1953.

Joseph D. Ryan and Arthur Ryan, Chicago, Ill., for plaintiff-appellant.

Lowell Hastings, Drennan J. Slater and Gerald M. Chapman, Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff brought this suit for damages for personal injuries allegedly resulting from the negligent operation of one of defendant's trains at and near its Maplewood Station in Chicago, Illinois. The district court granted defendant's motion for a directed verdict. Plaintiff's motions to set aside the verdict and for a new trial were denied.

Plaintiff lived on the third floor of an apartment house located about 500 feet distant from the Maplewood Station. On September 26, 1949, he left his apartment at 7:30 A. M., intending to board the Chicago-bound train on defendant's railway due at Maplewood Station at 7:33 A. M. The railway tracks are elevated and a stairway of 15 steps and an inclined ramp lead from the street level to the station platform. It is 56 feet from the top of the stairway to the nearest rail. When plaintiff reached a point about 100 feet distant from the bottom of the stairway, he heard the 7:33 A. M. train come into the station, and started to run. He was about half way up the stairway when the train started to pull out of the station. Plaintiff ran up the balance of the steps and continued running along the ramp, and then diagonally across the platform to the train.

Plaintiff had commuted to and from Maplewood Station for 13 years and was well acquainted with the station platform and surroundings, and knew that the railroad tracks crossed over and above Rockwell Street by means of a steel bridge immediately adjoining the south end of the platform. The clearance between the large steel girders on each side of the bridge and the cars of any passenger train crossing it was only about 10 inches.

By the time plaintiff reached the side of the train it had traveled forward at least the length of one car, had reached the speed of 5 or 6 miles per hour, and was increasing in acceleration. Plaintiff endeavored to board the moving train by grasping the handrail or grabiron at the rear of the fifth of the seven coaches, with his left hand, and placing his feet on the bottom step. Plaintiff is right-handed and at the time was carrying in his right hand a leather bag containing a thermos bottle of coffee and his lunch, and also a large envelope containing drawings. The place where plaintiff attempted to board the train was 50 to 60 feet from the nearest upright part of the steel girder with which he later came in contact. Plaintiff testified he paused on the step for a few seconds. Plaintiff's body came in contact with the steel girder, causing him to fall, whereby he suffered serious personal injuries.

At the close of plaintiff's evidence the court granted defendant's motion for a directed verdict, relying upon the decision of this court in Swigart v. Chicago & N. W. Ry. Co., 7 Cir., 180 F.2d 177. We think the court was correct in granting defendant's motion.

Jurisdiction being based on diversity of citizenship, the law of Illinois applies, as in the Swigart case. There the plaintiff alighted from a train at the wrong station and when he realized his mistake attempted to re-board it. To show the similarity in these cases, we quote from that opinion, 180 F.2d at page 178: "Plaintiff took at least one or two steps away from the train before he realized he was not at the Lake Forest station. After remaining stationary at the station for at least 30 to 40 seconds, the train started up. Plaintiff turned and faced the train, and waited until the rear end of the coach upon which he had been riding approached him, and, taking a step or two in the direction in which the train was proceeding, attempted to board the train. Plaintiff carried a package in his left hand and a topcoat was draped over his left arm. With his right hand plaintiff took hold of the grabiron on the forward or south side of the steps, and placed his right foot on the lower step. The momentum of the train whirled plaintiff around with sufficient violence that he lost his grip and fell between the platform and the rail, * * *." After discussing various decisions of Illinois courts (many of which are relied on by plaintiff herein), this court there

stated, 180 F.2d at page 179: "The Illinois rule would, therefore, seem to be that while the boarding of a moving train propelled by steam power is not in all cases negligence *per se*, it is nevertheless the duty of the court to take the question from the jury where the act is obviously dangerous and without reasonable necessity, real or apparent." We held that Swigart had been negligent as a matter of law and that such negligence proximately contributed to his injuries.

The trial court made the following comparison of the action of the plaintiff in the case at bar and of the plaintiff in the Swigart case: "Each of them was familiar with the operation of defendant's trains; each had reached a position of safety on defendant's station platform before attempting to board defendant's train; each attempted to board a train which had passed at least a car's length away from the station; and each was encumbered by a package in one hand. In some respects, plaintiff's conduct was even more reckless than that of Swigart."

Also applicable to the case at bar is the statement from our opinion in the Swigart case, 180 F.2d at page 180: "Plaintiff was not forced to elect one of alternative dangers. The only necessity or inducement for his action was his personal convenience. * * * He pursued a reckless course, and unfortunately suffered serious injuries."

■ Plaintiff argues that each of the judges presiding in the three previous trials of this cause denied defendant's motion for a directed verdict, and each submitted to the jury the issues of negligence and of willful and wanton conduct. Plaintiff insists that we should take into consideration the decision of the courts in these other trials, but the records in those cases are not before us. We must decide this case on the record that is here. How the trial judges ruled in those cases is of no greater significance in deciding this case than the fact that the jury in each of the three previous trials found that plaintiff was guilty of contributory negligence.

Plaintiff alleges error in the court's refusal to admit evidence of custom and practice of boarding and operating defendant's trains. Plaintiff offered to prove that men and women "customarily boarded these trains while they were slowly moving, apparently with the knowledge and consent of defendant's agents and servants; they were always accepted as passengers; it was the practice and custom of the operators of the train to always move slowly past the station platform until the last coach of the train had passed the girder; and that the trains moved slowly past the station platform and were never accelerated in speed or jerked until the last coach had passed the platform." The trial court's opinion stated with reference to the offer of proof: "Plaintiff next contends that the court erred in refusing to admit evidence tending to prove that certain other passengers customarily boarded defendant's trains while said trains were in motion. The court made clear at the trial that evidence of plaintiff's habitual manner of boarding defendant's train, if offered, would be admitted; but that evidence tending to show the manner in which other passengers boarded trains at other times would not be admitted. Plaintiff's conduct at the time of the accident must be measured by a standard of reasonable care; and the reckless conduct of other passengers cannot alter that standard. Moreover, the boarding of a moving train was not plaintiff's sole act of negligence; if it were, the question would not have been withdrawn from the consideration of the jury. Instead, plaintiff's testimony reveals a pattern of conduct which the Court of Appeals has described as 'obviously dangerous'; and even if it were established that other passengers engaged in equally dangerous practices, this court would be compelled to hold, as a matter of law, that plaintiff failed to exercise due care for his own safety."

■ We think the trial court did not commit error in denying the offer of proof. The mere fact that other passengers boarded moving trains was not admissible. North Chicago Street R. R. Co. v. Kaspers, 186 Ill. 246, 57 N.E. 849, 850. In that case a

14 year old boy was injured when he attempted to board a street car while it was in motion. The Illinois Supreme Court said, 186 Ill. at page 248, 57 N.E. at page 850: "On that question he would not be entitled to prove the mere fact that other persons boarded the defendant's cars while in motion, for the purpose of establishing a standard of ordinary care, regardless of whether those persons were reasonably prudent or negligent in so doing. At this hour of the day there was a great amount of travel at the point in question, and the general public embraces not only the reasonably prudent and cautious, but the careless, the heedless, and the reckless. It is not competent to show, as an excuse for an act of negligence, that others are accustomed to be equally negligent. * * " But the court also found that the conductors on defendant's cars had actively encouraged the practice of passengers to board them while they were in motion and assisted them in so doing.

The rule stated in the Kaspers case that evidence of acts of other passengers is admissible only when coupled with acts of encouragement and invitation by the carrier was reiterated by the Illinois Supreme Court in South Chicago City Railway Co. v. Dufresne, 200 Ill. 456, 65 N.E. 1075, 1076. The court there stated, 200 Ill. at page 460, 65 N.E. at page 1076: "The mere fact that the negligent, heedless, or reckless should choose to get on the cars without due regard for their own safety would not change the responsibility of the defendant." The court stated further: "In the case of [North Chicago Street] Railroad Co. v. Kaspers, 186 Ill. 246, 57 N.E. 849, the evidence was that passengers frequently got on the train at a certain place when it was moving slowly, and that the conductors encouraged the practice, telling them to come on, and aiding them to get on. In that case the railroad company induced the practice, and the continuance of it, by the action of its conductors, and it was held that it became its duty to run the trains in reference to the practice which it recognized and aided. To bring the case within the rule stated, there must be some concurrence by the railroad company in the practice, and not a mere failure to prevent acts of negligence, or to compel the public to use prudence and caution for their own safety."

The offer of proof was that others boarded moving trains *apparently* with the knowledge and consent of defendant's agents and servants. We agree with the trial court that the offer of proof did not indicate that defendant by its acts induced plaintiff and others to engage in the dangerous practice in which plaintiff was engaged on the morning he received his injuries. It appears clear from the record that the act of the plaintiff in attempting to board this train, which he knew was accelerating in speed, was obviously dangerous and without reasonable necessity, real or apparent. Swigart v. Chicago & N. W. Ry. Co., supra, 180 F.2d at page 180.

We hold that plaintiff was negligent as a matter of law, and that such negligence proximately contributed to his injuries. We also agree with the trial court that, under the circumstances of this case, the defendant was not guilty of willful and wanton conduct.

We have also reviewed the recent opinion of this court in Fiedler v. Chicago and North Western Railway Co., 7 Cir., 204 F.2d 515. However, in that opinion this court specifically distinguished the Swigart case, which we think is the case controlling the case at bar.

Affirmed.